**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ROGER LIEBING, et al.,

        Plaintiffs,

vs.

ROBERT SAND, et al.,

        Defendants.

No. 17-CV-142-LRR

**REPORT AND RECOMMENDATION**

---

**TABLE OF CONTENTS**

I.  Background ................................................................... 3

II.  The Southern District of Iowa Complaint ................................. 5

III.  The SDIA Order Dismissing Plaintiffs' Complaint ...................... 9

IV.  The Instant Complaint .................................................... 10

V.  Applicable Law Regarding Defendants' Motion to Dismiss .......................... 18

VI.  Defendants' Motion to Dismiss ......................................... 19

    A.  Standing ................................................................ 20

    B.  Defendant Prosecutors are Entitled to Immunity From Suit ........................ 21

    C.  Defendant Judges are Entitled to Absolute Immunity ............................... 23

    D.  Defendant Investigators are Entitled to Absolute Immunity ....................... 26

    E.  Other Grounds for Dismissal Against Non-Prison Defendants .................... 27

        1.  Whether Litigation is Barred by the *Rooker-Feldman* Doctrine ................. 28

2. Whether Litigation is Barred by *Heck v. Humphrey* .............................. 30

3. Whether Litigation is Barred by Issue Preclusion .................................. 31

4. Whether Plaintiffs Have Exhausted Iowa Tort Claims Act ...................... 32

5. Whether Claims are Barred by the Statute of Limitations ........................ 32

F. Claims Against the Prison Defendants.................................................. 33

1. Failure to Exhaust Administrative Remedies ...................................... 35

2. Claims Against Defendants in Their Official Capacities .......................... 37

3. Lack of Substantive Allegations Against Individual Defendants................. 37

4. Failing to Allege the Discipline has Been Reversed or Invalidated ............. 38

5. Failure to Allege Segregation Was Atypical or Significant...................... 39

6. Failure to Allege Prejudice Regarding Access to Courts ........................ 41

G. Defendants' Claim of Qualified Immunity ............................................. 42

VII. Defendants' Motion For Sanctions.................................................... 43

VIII. Conclusion ................................................................................ 45

This matter is before me for a Report and Recommendation regarding defendants' motions to dismiss the complaint (Doc. 36) and for sanctions (Doc. 38). Plaintiffs allege a violation of constitutional rights and bring this suit pursuant to Title 42, United States Code, Section 1983.[1] For the reasons that follow, I respectfully recommend the Court

_____

[1] Plaintiffs also referenced Title 28, United States Code, Section 2254, but this Court dismissed any claims under that statute because the complaint failed to make any "specific allegation that Lucas is being held in custody in violation of the constitution," failed to specify the grounds supporting the petition, failed to conform to the standard form governing the filing of Section 2254 petitions, and failed to show an exhaustion of remedies available in the Iowa courts. (Doc. 8, at 2-3).

dismiss the complaint with prejudice. Regarding defendants' motion for sanctions, I respectfully recommend the Court deny defendants' motion for sanctions for failure to comply with Rule 11, but consider imposing sanctions *sua sponte* because another federal court dismissed many of the same baseless claims.

## I.    BACKGROUND

In June 2011, the State of Iowa charged plaintiff Alan Lucas with the crimes of first degree theft, ongoing criminal conduct, and money laundering. *Iowa v. Lucas*, FECR094149 (Linn Cnty., Iowa Dist. Ct.). In October 2013, Lucas was convicted in state court of ongoing criminal conduct and first degree theft (the state having dismissed the money laundering charge before trial). The court sentenced defendant to thirty years in prison. Assets seized by the state pursuant to the criminal case, including a BMW vehicle, were liquidated and the proceeds were provided to the clerk of court for distribution to the victims. The Iowa Court of Appeals affirmed Lucas' conviction. *See Iowa v. Lucas*, 870 N.W.2d 687 (Table), 2015 WL 4468844 (Iowa App. 2015).

In its opinion, the Iowa Court of Appeals summarized the underlying facts as follows:

> Covenant Investment Fund, L.P. (Covenant) is a hedge fund formed by Noah Auwles, who acted as the fund's general partner. It consists of a "family" of different funds, or what is known as "a fund of a fund." Some of Covenant's investors complained to the Iowa Insurance Commissioner about its poor performance. Auwles was advised to break up Covenant by liquidating each of the funds and distributing the money to the fund's investors. Auwles liquidated one of Covenant's funds, UltraSharp, before selling Covenant.
>
> In May 2010, Auwles sold Covenant to Lucas for the purchase price of one dollar and Lucas's agreement to assume liability for a $62,540 debt Covenant owed. Lucas owned a number of shell corporations that were not profitable when he took control of Covenant. One of those corporations, Phalanx Technology Holdings, was about to be evicted from its office because it owed $9000 for rent.

> When Lucas took control of Covenant, it had $189,000 in the bank from the UltraSharp liquidation. Although that money was supposed to be distributed to investors, Lucas had spent between $157,000 and $167,000 of that $189,000 within a year of assuming control of Covenant. Lucas used Covenant funds to pay the rent for Phalanx Technology Holdings, start-up expenses for a data center Lucas wanted to build, and the salary of the person hired to raise capital for the data center. Lucas also used Covenant funds to purchase a BMW for business and pay a number of personal expenses, including his wife's credit card debt and the property taxes on his personal residence.

2015 WL 4468844, at *1. Lucas unsuccessfully appealed the court's order of restitution. *Iowa v. Lucas*, 884 N.W.2d 222, (Table), 2016 WL 1705511 (Iowa App. 2016). Lucas had absented himself from trial after the first day and the State subsequently charged him with failure to appear. He was convicted and unsuccessfully appealed that conviction as well. *Iowa v. Lucas*, 885 N.W.2d 220 (Table), 2016 WL 3272899 (Iowa App. 2016). The State of Iowa also brought a civil suit against Lucas and business entities he controlled for ongoing criminal conduct, consumer fraud, and Blue Sky law violations. The state court entered default judgment against Lucas and his business entities; he again unsuccessfully appealed the entry of default judgment. *State ex rel Miller v. Lucas*, 839 N.W.2d 675 (Table), 2013 WL 4769374 (Iowa App. 2013).

Following Lucas' conviction and appeals, on September 9, 2014, Lucas was convicted of contempt for violating a protective order by writing letters to the partners in Covenant Investment Fund. *Iowa v. Lucas*, FECR 094149. Judge Nancy Baumgartner, named as a defendant in the instant litigation, was the judge who entered the judgment against Lucas. On February 16, 2017, Judge Christopher Bruns, also named as a defendant in the instant litigation, found Lucas in contempt of court a second time for contacting the victims of his crimes. *Id.* Appeals of those contempt convictions are pending.

On July 14, 2016, the same plaintiffs in this case filed a similar lawsuit against many of the same defendants in the United States District Court for the Southern District of Iowa (SDIA), Case No. 16-CV-419. On August 8, 2016, the District Court dismissed the complaint. (16-CV-419, Doc. 8). Plaintiffs allege the dismissal was without prejudice. (17-CV-142, Doc. 42-1, at 10). This is not accurate. There is nothing in the order stating that the dismissal was without prejudice. Thus, the dismissal is properly considered to be with prejudice. *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001) (holding that where a court does not specify that an involuntary dismissal is without prejudice, the dismissal operates as one with prejudice). Plaintiffs did not appeal that order. They did, however, later file a motion to set aside and vacate the judgment under Federal Rule of Civil Procedure 60(b). The motion was denied. (16-CV-419, Doc. 12). Plaintiffs did not appeal that order either.

## II.    THE SOUTHERN DISTRICT OF IOWA COMPLAINT

Because it is important to the issue of sanctions, I will summarize plaintiffs' Southern District of Iowa (SDIA) complaint so that a comparison can later be made between that complaint and the one filed in this Court.

In the SDIA case, plaintiffs filed the action pro se. In a 99-page complaint, plaintiffs sought relief for Lucas' allegedly wrongful arrest and conviction, and for the subsequent loss of cash assets and personal property seized by the State of Iowa as part of the prosecution. Plaintiffs also sought injunctive relief. In the SDIA case, plaintiffs alleged that Covenant Investment Fund (CIF) was organized under Delaware law and attracted limited parties from eight states, including Iowa. Its general partner, Covenant Asset Management, LLC (CAM) was allegedly a limited liability company based in Cedar Rapids, Iowa. CAM's sole business was managing the assets of CIF. CIF and CAM shared offices with Covenant Benefits, LLC and Covenant Advisors. Noah Auwles was "[a]t the center of all of the[se] Covenant entities." (16-CV-419, Doc. 8, at 7).

Plaintiffs further alleged that in 2008, the United States economy suffered significant losses and CIF lost most of its original investment. Plaintiffs alleged that from August 2009 through January 2010, a number of limited partners of CIF approached Lucas about taking over CIF. In 2010, plaintiffs alleged that Lucas, through his company Prosapia Financial, LLC (Prosapia) arranged for Prosapia Capital Management (PAM) to purchase 100% of Auwles' interest in the Covenant entities. Lucas took over as the operating manager of CIF and CAM.

In the SDIA complaint, plaintiffs alleged that the CIF limited partners or investors were informed of these changes and at least one requested to withdraw his investment. When the request was denied, the investor filed a complaint with the Iowa Insurance Division (IID). On August 20, 2010, the IID issued a cease and desist order barring CIF from selling securities. Lucas ignored this order because he believed Iowa did not have jurisdiction.

In the fall of 2010, one of CIF's sister holdings, Phalanx Technology Holdings, LLC (Phalanx), purchased a 2006 BMW valued at more than $42,000.

In May 2011, Iowa law enforcement officials, acting at the direction of the Iowa Attorney General's Office, executed a seizure warrant, seizing the BMW, Phalanx's cash accounts, and cash accounts in the name of Asherlee Management Services.

In the SDIA complaint (Case No. 16-CV-419, Doc. 1), plaintiffs sought the following relief:

> Injunctive Relief: CIF will suffer irreparable harm if its funds are distributed to its so-called limited partners by the Iowa AG and the Linn County Court. Its funds could be lost forever. It will be divested of its property without due process. CIF will win on the merits as it has complete ownership of its property by way of a real "legitimate claim of entitlement" under Delaware law. The public interest is served by the constitutional rights being upheld and protected.

Count One: Declare CIF is a Delaware limited partnership and under Delaware law, its partners, both limited and general, have no property interest and are not co-owners of and in CIF's assets because Delaware law denies partners, limited and general partners, any "legitimate claim of entitlement" as owners or co-owners of partnership property, thus, any and all partners have no ownership interest in partnership property.

Count Two: Declare that Phalanx Technology Holdings, L.C. is the only rightful owner of its automobile registered and titled in Phalanx's name and that no limited or general partner of its parent has any interest in its protected property interest.

Count Three: Declare that the bank account at Kerndt Brother's Bank on May 17th, 2010 containing nearly $190,000 was the partnership property of CIF, as the title holder of the account, and that no limited partner or general partner of CIF has any property interest in it because limited and general partners have no "legitimate claim of entitlement" to corporate property owned by the partnership.

Count Four: [Declare that] General partners of Delaware limited partnerships have a property interest in the management of the partnership's business and affairs because Delaware law 15-401(f) provides a "legitimate claim of entitlement" and that Delaware law states that interest is "personal property."

Count Five: Declare that under Iowa law one must have an ownership interest in the property to be a victim of a crime of theft under 714.1(2) and that with no interest in the claimed property no theft occurred.

Count Six: Declare that the State of Iowa lacked probable cause by the use of false affidavits and false testimony to obtain a warrant to search. Also declare that the statements in the affidavits for search and the minutes of testimony are intentionally false and violate Alan Lucas's constitutional rights to be free of a conviction by false testimony and the right not to be arrested without probable cause.

Count Seven: Further relief, based on the declaration that the original accounts belonged to CIF and its subsidiaries, plaintiffs demand the

immediate return to CIF the funds seized as CIF is the rightful owner of the funds seized.

Count Eight: Further relief, immediate return to CIF the full and maximum value of the 2006 BMW as of the date of May 16, 2011.

Count Nine: Further relief, the payment of pre-judgment interest, for count seven and count eight, as afforded by Iowa law for the abuse of seizure and loss to CIF for the funds from May 16, 2011 until present at the rate of 5% annually.

Count Ten: Further relief, permanently enjoin the Iowa Attorney General Office from attempting to seize any further property from CIF and any of its affiliates to distribute to any partner, limited or otherwise.

Count Eleven: Further relief, permanently enjoin the Iowa Attorney General's office from regulating any of CIF internal affairs in violation of the Commerce Clause of the United States Constitution. And permanently enjoin the Iowa Attorney General's office from executing any judgment it received in Iowa State Courts against CIF, any of CIF subsidiaries, CIF's general partners and affiliates of the general partners, in connection and deriving from the original warrant on May 16, 2011.

Count Twelve: Further relief, vacate any and all Iowa State Court judgments against any and all general partners of Covenant Investment Fund and the affiliates of the General Partners in accordance with Count Eleven.

Count Thirteen: Further relief, vacate the criminal case judgment, for a *Franks* violation, in Iowa District Court Case No. FECR094149 against Alan Lucas for the reasons in Count Six.

Count Fourteen: Further relief, vacate criminal cases against Alan Lucas stemming out of the Iowa District Court Case No. FECR094149 case, "failure to appear" case number FECR105992 as invalid due to *Franks* violation in the FECR094149 case.

Count Fifteen: Enjoin the Clerk of Court in Linn County from executing the State court judgments in favor of the Iowa Attorney General against

Alan Lucas, which require the funds in its possession to be distributed to Hansons, Hosch, and Millers. Instruct and order the Linn County Clerk Court to immediately return the funds to CIF as it is the proper owner of such funds in the Clerk's possession.

Count Sixteen: Award compensatory damages in the amount of $450,000 in to-date attorney's fees and loss of use of funds in business. Punitive damages award for $3,000,000 for "conscience shocking behavior" and "inhumane abuse of power."

(Case No. 16-CV-419, Doc. 1) (paragraphing altered).

### III.    THE SDIA ORDER DISMISSING PLAINTIFFS' COMPLAINT

In an order dated August 8, 2016, the Honorable Stephanie M. Rose, United States District Court Judge for the Southern District of Iowa, dismissed plaintiffs' complaint. The court held that plaintiffs' assertion that Lucas is actually innocent and that his criminal convictions should be overturned are claims that can only properly be brought by filing a petition for writ of habeas corpus and not as a cause of action under Title 42, United States Code, Section 1983. (Case No. 16-CV-419, Doc. 8, at 8).

The court further held that any claim for damages for alleged due process violations related to the state's seizure of assets as part of Lucas' criminal prosecution were barred because plaintiffs failed to show that Lucas' conviction or sentence had been reversed on appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus, citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). (*Id.*, at 8-9).

Finally, with respect to plaintiffs McCool and Liebing, the court found the complaint only stated their residency and their status as partners in CIF. The court found that the complaint failed to make any assertion that either plaintiff suffered any injury, or that defendants caused them any injury. Therefore, the court dismissed the claims by these plaintiffs for lack of standing. (*Id.*, at 9).

## IV.  THE INSTANT COMPLAINT

Plaintiffs initially filed the instant complaint in the Southern District of Iowa as a petition for writ of habeas corpus, pursuant to Title 28, United States Code, Section 2254. The Honorable Charles Wolle, United States District Court Judge for the Southern District of Iowa, entered an order transferring the case to this District.  In transferring the case, Judge Wolle noted that the Section 2254 claim pertained only to Lucas, and that the bulk of the allegations involved claims alleging a violation of constitutional rights brought pursuant to Title 42, United States Code, Section 1983.  As noted, this Court previously dismissed the Section 2254 claim.  (Case No. 17-CV-142, Doc. 8).

Plaintiffs are represented by counsel before this Court.  Perhaps as a result, the language of the instant complaint differs from the SDIA complaint.  Nevertheless, other than new claims of mistreatment by prison authorities, the essence of the two complaints is the same, and the same plaintiffs bring many of the same claims they brought in the SDIA, despite that Court's dismissal of the complaint.  Again, because it will be important to the issue of sanctions, I will devote some effort to summarize the complaint plaintiffs filed in this Court and compare it to their SDIA complaint.

Plaintiffs Liebing and McCool are again named plaintiffs in this lawsuit.  The complaint mentions them in reference to their residency and their status as partners in CIF.  (Doc. 1, at 2, 4).  The only other reference to them is in connection with conclusory language asserting that their First and Fourteenth Amendment rights were allegedly violated and "chilled" because state court judges allegedly wrongfully held Lucas in contempt of court.  As with the SDIA complaint, there is no assertion of fact establishing how they were harmed in any way, or how any conduct by any defendant harmed them. The state no contact order, and the contempt judgments for violating that order, were against Lucas, not Liebing or McCool or CIF or the other related companies.

All of the people plaintiffs named as defendants in the SDIA complaint are again named as defendants in the instant complaint, as are additional defendants. The instant complaint names state court judges Nancy Baumgartner and Christopher Bruns as defendants. It also adds as defendants Robert Johnson, Warden, Iowa State Penitentiary in Fort Madison, and the following employees of the Fort Dodge Correctional Facility: Don Harris (Assistant Warden); Terry Hawkins and Todd Carver (Unit Managers); Neddie Renshaw (Treatment Director); and Rob Seil, Dawn Fulton and Paula Addison (whom plaintiffs allege work under Renshaw's supervision) (collectively "Prison Defendants"). (Doc. 1, at 5).

Despite the fact that lawyers wrote the instant complaint, it is poorly drafted and organized. In a nutshell, however, the complaint appears to make five general claims. First, it claims the State falsely and wrongfully convicted Lucas. Second, it claims the State violated plaintiffs' rights by seizing the BMW and bank accounts. Third, it alleges that the State, in particular state court judges, violated the United States Constitution by holding Lucas in contempt of court. Fourth, it alleges that prison personnel have violated Lucas' constitutional rights. Plaintiffs also request injunctive relief to prevent the execution of any judgment obtained against plaintiffs.

Although much of the wording in the instant complaint has been changed from the SDIA complaint, and the instant complaint omits some of the extraneous details and legal authority, the instant complaint again focuses on a claim that Lucas was wrongfully convicted, that Lucas is actually innocent, and that his criminal convictions should be overturned. (Doc. 1, ¶¶ 40-43, 45-46, 54, 67-72). Although the verbiage is different to some degree, the essence of the claims set forth in the instant complaint is identical to the essence of those brought in the SDIA.

The instant complaint also makes a claim for damages, as did the SDIA complaint, for alleged due process violations related to the state's seizure of assets as part of Lucas'

criminal prosecution. (Doc. 1, ¶¶ 34-39, 41, 44, 64, 67-72). These claims focus on the State of Iowa's allegedly wrongful seizure of the BMW and bank accounts.

The complaint in this Court contains a long (more than thirteen pages) recitation of Delaware partnership law comprised of legal argument regarding plaintiffs' interpretation of Delaware statutes and case law to support plaintiffs' position that the State of Iowa wrongfully convicted Lucas and wrongfully seized the property. (Doc. 1, at 13-27). This portion of the complaint is largely a verbatim repetition of a similar portion of the SDIA complaint.

The instant complaint also contains two claims that plaintiffs did not make in their SDIA complaint. First, plaintiffs allege that Assistant Attorney General Sand and the state judges violated plaintiffs' constitutional rights by charging Lucas with contempt of court and subsequently convicting him. (Doc. 1, ¶¶ 47-49, 52, 66, 71-72). Second, plaintiffs allege that the Prison Defendants have violated Lucas' constitutional rights during his incarceration. (Doc. 1, ¶¶ 73-76).

In the instant complaint, plaintiffs sought the following relief:

A. Declare that Covenant is a Delaware limited partnership and that under Delaware law its partners, both limited and general, have no property interest and are not co-owners of Covenant's assets because Delaware law and its courts denies partners, limited and general partners, any "legitimate claim of entitlement" as owners or co-owners partnership property, and thus none of the partners have an ownership interest in partnership property;

B. Declare that Phalanx Technology Holdings, LLC is a Delaware limited liability company and that under Delaware law is the only rightful owner of the 2006 BMW 750 which was registered and titled in Phalanx's name and that no limited partner or general partner of its parent, Covenant, has an interest in Phalanx's protected property ownership.

C. Declare that under the Limited Partnership Agreement signed by Alan Hanson and Marcella Hosch, that neither of these limited partners retained ownership of the specific assets of Covenant.

12

D. Declare that Covenant was the legitimate owner and title holder of the bank account at Kerndt Brothers Bank on May 17, 2010 which contained nearly $190,000.00 and that no limited partner or general partner of Covenant, Phalanx or Asherlee has any property interest in it because limited and general partners have no legitimate claim of entitlement to "property owned by the partnership."

E. Declare that Alan Lucas and Prosapia as general partners of Covenant have protected a property interests in the management of the partnership's business and affairs under Delaware law 6 Del. C §1518 and §1524 which provides the general partner a statutory legitimate claim of entitlement and that Delaware states that the partnership interest is personal property.

F. Declare that the State of Iowa had no standing to advocate for the limited partners for possession, it had no ownership interest in the property seized, it could not control or to possess property owned by a Delaware Limited Partnership, Covenant, and a Limited Liability Company, Phalanx under the holdings of *Fuentes vs. Shevin*, 407 US 67 (1972) and under *DeBower vs. County of Bremer*, 820 NW 2d. 20 (Ia. App. 2014) and under Commerce Clause as held in *Edgar vs. Mite*, 457 US 624 (1982) as well as in *Dennis vs. Higgins*, 498 US 439, 449-50; accord *Pioneer Military Lending, Inc. vs. Manning*, 2 F.3d. 280 (8th Cir. 1993).

G. Declare that the defendants from the Iowa Department of Criminal Investigation and the Iowa Attorney General's office violated Covenant, Asherlee and Phalanx's procedural and substantive due process rights under the Fourteenth Amendment by seizing their assets without notice and opportunity to be heard.

H. Declare that under Iowa Code §714.1(2) the state must establish that the alleged victim had an ownership interest in the property to be a victim of theft and that with no such interest in the property, Alan Hanson and Marcella Hosch had no interest in the improperly seized property so that, as a matter of law, no theft occurred.

I. Declare that the State of Iowa lacked probable cause by the use of false affidavits and false testimony to obtain a search warrant and conviction

when the State through the Attorney General's Office knew or had reason to know through a reasonable investigation that Covenant, Phalanx and Asherlee were the rightful owners of the property improperly seized by the State of Iowa and by their actions violated Alan Lucas' Fourth, Fifth and Fourteenth Amendments right to be free of conviction by false testimony and the right not to be arrested without probable cause under the Fourth and Fifth Amendment.

J. Declare that the Iowa Attorney General and its employees and agents improperly attempted to enforce and circumvent the actual contractual rights of limited partners of a Delaware limited partnerships, Covenant, through criminal prosecution of Alan Lucas, in violation of the Commerce Clause of the United States Constitution, and fails to give the statutes and common law of the State of Delaware full faith and credit.

K. Order the State of Iowa and the individual defendants to return to Covenant the funds seized as Covenant is the rightful owner of the funds seized and that it was deprived of due process and an opportunity to be heard prior to the seizure of its assets in violation of the Fourteenth Amendment and order payment of prejudgment interest for the loss of the use of funds at a compound rate of 10.5 percent.

L. Temporarily and permanently enjoin the Iowa Attorney's [sic] General's office, the State of Iowa or any of its agents or employees from executing any judgment obtained in the Iowa District Court for Linn County against Covenant any of its subsidiaries, its general partners and affiliates in connection with and deriving from the original warrant of May 16, 2011.

M. Vacate and expunge any and all Iowa state court judgments and orders against any and all general partners of Covenant and its affiliates due to the fact that Iowa had no subject matter or personal jurisdiction over Covenant or Phalanx and that by improperly exercising jurisdiction over internal affairs of the Delaware Limited Partnership (Covenant) and a Delaware Limited Liability Company (Phalanx) the defendants have violated the Internal Affairs Doctrine to the Commerce Clause of the United States Constitution.

N. Vacate the criminal case judgment in case number 06571FPCR94149 against Alan Lucas since the State of Iowa has failed to

prove it had subject matter jurisdiction and that that [sic] Lucas, as general partner deprived Alan Hanson, Marcella Hosch, or any other limited partner of Covenant of their property rights and the State of Iowa has failed to demonstrate that the State, Alan Hanson nor Marcella Hosch had any property interest in the assets of Covenant, Phalanx, or their subsidiaries and affiliates.

O. Temporarily and permanently enjoin the Iowa Attorney General, its employees from instituting or taking any further legal proceedings against Covenant, Prosapia, Phalanx, Asherlee and their general partner, Alan Lucas and their affiliates and subsidiaries.

P. Temporarily and permanently enjoin the Clerk of Court in Linn County from executing the state court judgments in favor of the State of Iowa against Alan Lucas, and temporarily and permanently enjoin it the Linn County Iowa Clerk of Court from sending restitution funds in its possession any limited partner, including, but not limited to Alan Hanson, Marcella Hosch and Gwen Miller and Frances Miller, instruct and order the Linn County Circuit Clerk of Court immediately return the funds to Covenant, Phalanx, and Asherlee.

Q. Enter an order granting plaintiffs right to recover their attorney's fees, expert fees and costs under 42 USC §1988 and under the Title 6 Del. 17-1004.

R. Vacate the September 9, 2014 order of contempt and sentence of Linn County District Court Judge Nancy Baumgartner as the result of its violation of Alan Lucas' First and Fourteenth Amendment rights pursuant to 42 USC §1983, and as the result of the State of Iowa's violation of the Internal Affairs Doctrine and the Commerce Clause of the United States Constitution and in retaliation for Lucas, Liebing and McCool's exercise of their First Amendment rights to petition the Delaware Chancery court to seek redress against Gwen and Frances Miller.

S. Vacate the January 2017 order of contempt and sentence of Linn County District court Judge Christopher Bruns against Alan Lucas as the result of its violation of Alan Lucas' First and Fourteenth Amendment rights pursuant to 42 USC §1983, and as a result of the State of Iowa's violation of the Internal Affairs Doctrine of the Commerce Clause of the United

States Constitution and in retaliation for Lucas Liebing and McCool's exercise of their First Amendment rights to petition the Delaware court to seek redress against Gwen and Frances Miller.

T. Order the State of Iowa to immediately release Alan Lucas from prison as the result of the vacation of the March 14, 2014 judgment and order of September 9, 2014, in case number 06571FECR094149 in the Iowa District Court in and for Linn County.

U. Order the State of Iowa to immediately release Alan Lucas from prison as the result of the vacation of the January 2017 order in case number 06571FECR094149.

V. Vacate the order of April 17, 2015 in Linn County Case number 06571FECR105992 due to the State of Iowa's lack of standing in Case number 06571FECR094149.

W. Grant Alan Lucas' request for a writ of habeas corpus under 28 USC §2254.

X. Order the State District Court of Linn County to dismiss with prejudice the criminal cause of the action in case number 06571FECR105992.

Y. Order the State District Court of Linn County to dismiss with prejudice the criminal causes of actions against Alan Lucas in case number 06571FECR094149.

Z. Temporarily restrain and preliminarily and permanently enjoin Robert Johnson, Don Harris, Tony Hawkins, Todd Carver, Rob Seil, Dawn Fulton, Paula Addison and Neddie Renshaw from Violating Alan Lucas First and Sixth Amendment rights, including revocation of all discipline imposed as the result of such violations and order them jointly and severally to cease and desist delaying delivery of mail addressed to him from his attorneys and opening his mail marked legal mail, under the expungement of the reports filed and reinstate his privileges, including the return to the honor dorm. Order defendants Johnson and the remaining Fort Dodge Correctional Facility employees to pay plaintiff Alan Lucas' attorney's fees and costs pursuant to 42 USC §1988.

(Doc. 1, at 31-36).

In comparing the relief plaintiffs seek in the instant case against what they sought in the SDIA complaint, there is again significant overlap (although, again, the wording is slightly different in places). The following paragraphs are materially identical except for minor changes in wording:

| SDIA Complaint (Case No. 16-CV-419) | NDIA Complaint (Case No. 17-CV-142) |
| --- | --- |
| Count 1 (Doc. 1, at 42) | Paragraph A (Doc. 1, at 31) |
| Count 2 (Doc. 1, at 42) | Paragraph B (Doc. 1, at 31) |
| Count 3 (Doc. 1, at 42) | Paragraph D (Doc. 1, at 31) |
| Count 4 (Doc. 1, at 42) | Paragraph E (Doc. 1, at 31-32) |
| Count 5 (Doc. 1, at 42) | Paragraph H (Doc. 1, at 32) |
| Count 6 (Doc. 1, at 42-43) | Paragraph I (Doc. 1, at 32) |
| Count 7 (Doc. 1, at 43) | Paragraph K (Doc. 1, at 33) |
| Count 11 (Doc. 1, at 43) | Paragraph L (Doc. 1, at 33) |
| Count 12 (Doc. 1, at 43) | Paragraph M (Doc. 1, at 33) |
| Count 13 (Doc. 1, at 44) | Paragraph N, T, U, Y (Doc. 1, at 34-35) |
| Count 14 (Doc. 1, at 42) | Paragraph V & X (Doc. 1, at 35) |
| Count 15 (Doc. 1, at 42) | Paragraph P (Doc. 1, at 34) |

The only relief sought in the SDIA not sought in the instant complaint is for return of the value of the BMW car (Count Eight) and an award of compensatory and punitive damages (Count Sixteen). Paragraphs C, F, G, J, Q, R, S, W and Z are new prayers for relief that do not directly correspond with any in the SDIA complaint. Paragraphs C, F, G, & J all allege variations of other allegations and prayers for relief having to do with the State of Iowa's alleged wrongful conviction of Lucas and seizure of assets in connection with that case. Further, paragraphs R & S address the contempt conviction which plaintiffs sought to vacate in the SDIA case. Paragraph Q is simply a request for attorney's fees. Paragraph W is a request for a writ of habeas corpus, which this Court

has already denied.  Only paragraph Z, seeking relief from alleged constitutional violations during Lucas' incarceration is truly new and unique to the instant complaint.

## V.    APPLICABLE LAW REGARDING DEFENDANTS'
## MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555-56 (citation and internal quotation marks omitted). Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.* at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." *Id*. Where a pleading contains no more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester, Mass.*, 108 F.2d 302, 306 (8th Cir. 1940).

## VI.    *DEFENDANTS' MOTION TO DISMISS*

In their motion to dismiss, defendants first assert that the Court lacks subject matter jurisdiction for a number of reasons: (1) plaintiffs' injunctive and declaratory relief claims are barred by the *Rooker-Feldman* Doctrine; (2) the claims are barred because Lucas' underlying conviction has not been reversed or invalidated; (3) plaintiffs' claims are barred because they have already litigated the issues; (4) plaintiffs have not alleged exhaustion under the Iowa Tort Claims Act or Prison Grievance System; and (5) plaintiffs cannot seek damages against the defendants in their individual capacities. Defendants also argue that plaintiffs' complaint fails to state a claim for several reasons: (1) there are no substantive allegations against any individual defendants; (2) the statute of limitations bars claims against defendants; (3) claims against the prosecutors are barred by absolute immunity; (4) claims against investigators are barred by witness immunity; (5) claims against the judges are barred by judicial immunity; and (6) claims against the prison officials fail to state a claim. Finally, defendants argue they are entitled to qualified immunity.

I find it most expeditious to carve this case down to manageable size by first addressing which of the plaintiffs have standing to assert any claim, and then addressing which defendants are immune from suit. After addressing those issues, I will then turn

to the various grounds defendants raise for dismissing this case for any remaining defendants.

### A. Standing

Plaintiffs consist of Lucas, Liebing, and Gary McCool, individually as in their capacity as partners of CIF; CIF (a limited partnership); and, Prosapia, Phalanx, and Asherlee (limited liability companies). "Article III of the United States Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" *Boyle v. Anderson*, 68 F.3d 1093, 1100 (8th Cir. 1995) (citation omitted). To have standing to sue, a plaintiff must have a "personal stake in the outcome of the controversy." *Baker v. Carr*, 369 U.S. 186, 204 (1962). In other words, a plaintiff must have "'a definite and concrete controversy involving adverse legal interests at every stage in the litigation[,]' . . . for which the court can grant specific and conclusive relief." *Ark. AFL–CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (quoting *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)).

I agree with Judge Rose that the complaint in this case, just like the SDIA complaint, fails to state any claim that either plaintiff Liebing or McCool "has suffered an injury in fact, much less how such an injury is traceable to the challenged actions of the defendants." (Case No. 16-CV-419, Doc. 8, at 9). As noted, the only claims for relief naming plaintiffs Liebing and McCool pertain to alleged violations of their First and Fourteenth Amendment rights in relation to a state no contact order, and contempt judgments that pertain only to Lucas. To the extent Liebing and McCool attempt to assert some indirect injury resulting from their partnership in CIF, plaintiffs Liebing and McCool lack standing to do so properly. *See Potthoff v. Morin*, 245 F.3d 710, 716-17 (8th Cir. 2001) (extending the shareholder rule, which bars individual shareholders from suing for injuries to a corporation, to civil rights actions brought pursuant to § 1983).

Moreover, plaintiffs Liebing and McCool do not have standing to bring suit under Section 1983 for alleged violations of constitutional rights belonging to Lucas or CIF. *See Van Leeuwen v. United States*, 868 F.2d 300, 301-02 (8th Cir. 1989) (per curiam) (affirming dismissal of due process claim based on violation of another person's Fifth Amendment rights); *United States v. Bruton*, 416 F.2d 310, 312 (8th Cir. 1969) (defendant lacked standing to challenge testimony of coparticipant implicating defendant in robbery on ground that such testimony was tainted by coparticipant's illegally obtained confession; Fourth and Fifth Amendment rights are personal rights and may not be vicariously asserted).

Therefore, I recommend the Court dismiss any claims by plaintiffs Liebing and McCool.

### B.       *Defendant Prosecutors are Entitled to Immunity From Suit*

Plaintiffs have brought suit against defendants Robert Sand, Kevin Cmelik, Tom J. Miller and Daniel Burstein, all of whom are or were prosecutors for the State of Iowa. Plaintiffs claim these prosecutors violated plaintiffs' constitutional rights by pursuing prosecution of Lucas and the seizure of assets as part of that prosecution. Defendant prosecutors assert they are entitled to absolute immunity. (Doc. 36-1, at 16-18). In their resistance, plaintiffs make no response to this argument. (Doc. 42-1).

The United States Supreme Court has made it clear that prosecutors are absolutely immune from suit for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (holding that prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case"). *See also Kalina v. Fletcher*, 522 U.S. 118, 128-29 (1997) (holding that a prosecutor has absolute immunity for conduct in the preparation and filing of a motion for an arrest warrant unless he acts as a witness); *Williams v. Hartje*, 827 F.2d 1203, 1209 (8th Cir. 1987) ("The decision of a

prosecutor to file criminal charges is within the set of core functions which is protected by absolute immunity. This is so even if the prosecutor makes that decision in a consciously malicious manner, or vindictively, or without adequate investigation, or in excess of his jurisdiction." (citation omitted)); *Myers v. Morris*, 810 F.2d 1437, 1446-47 (8th Cir. 1987), *abrogated on other grounds by Burns v. Reed*, 500 U.S. 478 (1991) ("[A]llegations that a prosecutor knowingly offered, used or presented false, misleading or perjured testimony at trial or before a grand jury do not defeat absolute prosecutorial immunity, regardless of how reprehensible such conduct would be if it occurred. The same is true for allegations of withholding or suppressing exculpatory evidence. . . . Soliciting and suborning perjured testimony does not create liability in damages for a prosecutor . . ..").

In *Imbler*, the plaintiff alleged that the prosecutors violated plaintiff's constitutional rights by allegedly knowingly relying on false information and testimony in prosecuting him. *Imbler*, 424 U.S. at 429-31. Plaintiffs in the instant case make the same type of allegations in relation to the prosecution of Lucas. Plaintiffs allege that: unnamed persons at the Iowa Attorney General's office seized bank accounts (Doc. 1, ¶ 39); defendant Burstein charged Lucas allegedly knowing a witness was making false statements (Doc. 1, ¶ 40); defendant Sand tried to "coerce" testimony at the trial (Doc. 1, ¶ 43); unnamed persons at the Iowa Attorney General's office sold seized assets and solicited people to make claims as victims (Doc. 1, ¶44); defendant Sand brought contempt charges against Lucas (Doc. 1, ¶ 52); defendants Sand and Cmelik allegedly presented false evidence to the court (Doc. 1, ¶67); defendant Sand presented false evidence to the court (Doc. 1, ¶68); defendant Sand allegedly made false claims to the court (Doc. 1, ¶71); and, in a conclusory statement, asserts defendant Sand violated Lucas' First and Fourteenth Amendment constitutional rights. (Doc. 1, ¶ 72). Just as in *Imbler*, the prosecutor defendants in this case are entitled to absolute immunity. Thus, I

find the claims made against the state prosecutors to be frivolous when the case law clearly demonstrates that they are immune from suit for their official conduct.

Therefore, I recommend the Court **grant** the defendant prosecutors' motion and dismiss any claims against defendants Rob Sand, Kevin Cmelik, Tom J. Miller and Daniel Burstein.[2]

### C. Defendant Judges are Entitled to Absolute Immunity

Plaintiffs have brought suit against defendants Nancy Baumgartner and Christopher Bruns, who are judges in the Sixth Judicial District for the State of Iowa. Plaintiffs claim these judges violated their constitutional rights by issuing orders and judgments against Lucas. Defendant judges assert they are entitled to absolute immunity. (Doc. 36-1, at 20-21). Plaintiffs respond that the judges are not entitled to judicial immunity from injunctive relief. (Doc. 42-1, at 15).

Plaintiffs' allegations against the judges are scattered throughout their complaint. Plaintiffs allege some unnamed judge of "the Iowa District Court for Linn County ignored the existence of the ownership interests of Covenant and Phalanx in these assets and deliberately failed to recognize the legally created Delaware limited partnership and limited liability companies." (Doc. 1, ¶ 41). Plaintiffs allege an unnamed judge of "[t]he trial court purposefully ignored the existence of Covenant's limited partnership agreement (LPA) in which Hanson has acknowledged receiving a partnership interest in the limited partnership and not ownership of the assets of Covenant." (Doc. 1, ¶ 43). Plaintiffs

---

[2] I would further note that plaintiffs' complaint attributes no conduct to Tom J. Miller personally. The Court may take judicial notice that Tom J. Miller is the Attorney General for the State of Iowa. Plaintiffs have named him as a defendant apparently because of his supervisory role. Respondeat superior cannot be a basis of liability, however, under Section 1983. *See, e.g.*, *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) ("In general, a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a respondeat superior theory of liability." (internal quotation marks and citation omitted)). Therefore, claims against defendant Miller should be dismissed on this additional ground as well.

allege that Judge Baumgartner entered a no contact order against Lucas, and that the no contact order allegedly violated Lucas' constitutional rights. (Doc. 1, ¶¶ 47 & 48). Plaintiffs allege that Judge Baumgartner found Lucas in contempt for violating the no contact order, and that finding violated plaintiffs' constitutional rights. (Doc. 1, ¶ 49). Plaintiffs allege that Judge Bruns also held Lucas in contempt for violating the no contact order, and that finding violated plaintiffs' constitutional rights. (Doc. 1, ¶ 53). Plaintiffs allege that these contempt orders "chilled" plaintiffs' First Amendment rights by preventing plaintiffs from petitioning the Delaware court "to redress wrongs committed by the other limited partners." (Doc. 1, ¶ 66). In their prayers for relief, plaintiffs ask this Court to vacate the contempt orders. (Doc. 1, at 34-35).

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). *See also Liles v. Reagen*, 804 F.2d 493, 495 (8th Cir. 1986) ("[A] judge is entitled to absolute immunity if the acts complained of were 'judicial acts' and were not taken in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978).). "'As a class, judges have long enjoyed a comparatively sweeping form of immunity . . ..'" *Duffy v. Wolle*, 123 F.3d 1026, 1034 (8th Cir. 1997), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (quoting *Forrester v. White*, 484 U.S. 219, 225 (1988)). Like other forms of official immunity, judicial immunity is an immunity from suit, not just from an ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, judicial immunity is not overcome by allegations that a judge acted in bad faith or intentionally engaged in misconduct. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). There are only two sets of circumstances in which a plaintiff can overcome the doctrine of judicial immunity: 1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, or 2) if the judge is being

sued for actions taken "in the complete absence of jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991).

Plaintiffs argue that the judges are not entitled to judicial immunity from injunctive relief, citing to *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984). (Doc. 42-1, at 15). In *Pulliam*, the plaintiff sought to enjoin a state court judge's practice of incarcerating persons awaiting trial for nonincarcerable offenses. *Pulliam*, 466 U.S. at 524-25. The Supreme Court held that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." 466 U.S. at 541-42. Unlike the plaintiff in *Pulliam*, however, the plaintiffs in this case are not seeking injunctive relief in relation to judicial action. To be sure, plaintiffs state in the introduction of their complaint that they "seek declaratory injunctive relief under FED. R. CIV. P. 57 and 65." (Doc. 1, ¶1). The only injunctive relief they expressly request, however, relates to the condition of Lucas' incarceration (Doc. 1, ¶ 76 & page 36), to enjoin the Iowa Attorney General's Office from executing any judgments or instituting further legal proceedings against plaintiffs (Doc. 1, at 33-34); and to enjoin the Clerk of Court for Linn County from executing the judgments against Lucas. (Doc. 1, at 34). In other words, this is not a case where plaintiffs are asking this Court to enter an injunction against the state judges to bar them from engaging in some future conduct. Rather, regarding any conduct by the state judges, plaintiffs want this Court to find Lucas' convictions wrongful, the seizure of assets wrongful, and to vacate his sentences and return property. That is not seeking injunctive relief against the judges. I find the claims against the state court judges to be frivolous when it is clear under the case law that the judges are absolutely immune from suit.

Therefore, I recommend the Court **grant** the defendant judges' motion and dismiss any claims against Judge Nancy Baumgartner and Judge Christopher Bruns.

### D. Defendant Investigators are Entitled to Absolute Immunity

Plaintiffs have brought suit against Darrell Simmons (Iowa Department of Criminal Investigations) and Michael Ferjak (former investigator with the Iowa Attorney General's office).[3] Defendant investigators argue that plaintiffs are pursuing claims against them as witnesses to certain events. (Doc. 36-1, at 18-19). Defendants argue that they were acting pursuant to an authorized court order and cannot be subject to suit as mere witnesses. (*Id.*). Plaintiffs did not respond to this argument in their brief. (Doc. 42-1).

Plaintiffs' complaint with respect to the investigators alleges that the investigators executed a warrant to seize the BMW vehicle and cash accounts. (Doc. 1, ¶ 38). It further alleges that the investigators "ignored the existence of the limited partnership agreement (LPA) and presented false evidence to the state court that the limited members of Covenant and Phalanx had retained ownership in assets of the two limited partnerships and limited liability company." (Doc. 1, ¶ 67). The language of this paragraph is vague as to what plaintiffs mean by "presented false evidence to the state court." The investigators could have presented evidence to the court in the form of an affidavit to secure the seizure warrants, but plaintiffs do not say that. The investigators could also have presented evidence to the court in the form of live testimony. In the context of the complaint as a whole, it is the latter reading that makes the most logical sense.

In support of their argument that the investigators are immune from suit under Section 1983, defendants cite *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983), for the proposition "that § 1983 does not authorize a damages claim against private witnesses."

---

[3] Plaintiffs also claim Kerry Bolt was an investigator with the Iowa Department of Criminal Investigation. (Doc. 1, ¶ 15). That is not accurate. Moreover, the complaint fails to attribute any alleged misconduct personally to Mr. Bolt. To the extent his conduct is at issue, it is in the capacity as a witness and therefore the outcome would be the same as it is with Simmons and Ferjak.

The quotation defendants chose to use from *Briscoe* fails to capture the true scope of the holding, however, because it suggests the witnesses have to be private parties and not government employees testifying in their official capacities. The *Briscoe* Court directly addressed this issue.

In *Briscoe*, a police officer was alleged to have provided false testimony at plaintiff's trial, resulting in his wrongful conviction. The Court noted that private persons are immune from suit for testifying, but the question before the Court was whether such testimony also extended to law enforcement officers who testify. The Court concluded that law enforcement officers are equally immune from suit for their testimony just like a private individual. *Briscoe*, 460 U.S. at 345-46. The Court explained that the rationale supporting absolute immunity for other participants in the judicial process (such as prosecutors and judges) applies with equal force to a testifying witness, since a witness's apprehension of subsequent damages liability might lead to a reluctance to testify, or once the witness takes the stand, untruthful testimony. *Id.* at 335–36. *See also, e.g.*, *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (holding that witnesses are absolutely immune from Section 1983 liability arising from their testimony in judicial proceedings); *Snelling v. Westhoff*, 972 F.2d 199, 200 (8th Cir. 1992) (same); *Conley v. Office of the Pub. Def.*, 653 F.2d 1241, 1242 (8th Cir. 1981) (same). Again, I find the claims against the state investigators to be frivolous.

Therefore, I recommend the Court **grant** the defendant investigators' motion and dismiss any claims against Darrell Simmons and Michael Ferjak.

### E.      *Other Grounds for Dismissal Against Non-Prison Defendants*

Defendants argue that there is a host of other reasons for the dismissal of the complaints against the non-prison defendants aside from the ones I have addressed above. Although I find that each of the non-prison defendants should be dismissed on the ground

that he or she is immune from suit, I will briefly address the various other reasons defendants raise for dismissal before I turn to the Prison Defendants.

### 1. *Whether Litigation is Barred by the* **Rooker-Feldman** *Doctrine*

Defendants argue that the *Rooker-Feldman* doctrine precludes a federal district court from acting as a de facto appellate court for cases that have been fully adjudicated by a state court, citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983), and *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415-16 (1923). (Doc. 36-1, at 7-8). Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because some of the plaintiffs were not parties in the state court litigation, and because Lucas had no opportunity to present claims of lack of subject matter jurisdiction in the state court proceedings. (Doc. 42-1, at 12-13).

The *Rooker–Feldman* doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Federal district courts are barred from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated by a state court. *See Feldman*, 460 U.S. at 482 n.16 ("If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding . . . then the District Court is in essence being called upon to review the state court decision. This the District Court may not do."); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034 (8th Cir. 1999); *Neal v. Wilson*, 112 F.3d 351, 356 (8th Cir. 1997). A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring). "[W]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."

*Id.* The state and federal claims need not be identical for the federal claim to be barred under the doctrine. *See In re Goetzman*, 91 F.3d 1173, 1177 (8th Cir. 1996).

Defendants' brief was unhelpful in distinguishing which claims they allege are barred by the doctrine. Rather, defendants only argue that plaintiffs complaint "and its many parts fall squarely within the scope of *Rooker-Feldman*." (Doc. 36-1, at 8). Defendants' brief speaks in terms of the "main thrust" of the complaint, but fails to specifically identify which of plaintiffs' claims defendants assert are barred under the doctrine. Clearly the claims against the Prison Defendants are not because Lucas had not yet begun serving his term of incarceration at the time of the state court case. On the other hand, I acknowledge (and have previously mentioned) that plaintiffs' complaint is poorly organized and drafted which, of course, makes the task of identifying specific claims difficult. Plaintiffs' brief on this issue is also not helpful. Plaintiffs appear to argue that the claims not barred by the doctrine are those made by plaintiffs other than Lucas, and, as to Lucas, any claim that is based on an assertion of a lack of subject matter jurisdiction of the partnerships and limited liability companies.

Determining whether the *Rooker–Feldman* doctrine controls this case "requires determining exactly what the state court held" to ascertain whether granting the requested federal relief would either void the state court's judgment or effectively amount to a reversal of its holding. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995); *see also Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811 (8th Cir. 1998). The state court judgment was one involving convictions of Lucas for committing crimes and the forfeiture of assets related to those crimes. I find plaintiff Lucas' federal claims (except those pertaining to the Prison Defendants), to the extent they can be discerned, to be inextricably intertwined with the state court judgment. Those claims, in a nutshell, are all grounded on the argument that the state wrongfully convicted Lucas and wrongfully ordered forfeiture of Lucas' assets. This Court could not rule in plaintiff

Lucas' favor on any of those claims without finding that the state court wrongfully entered judgments in the underlying cases.

As to the other plaintiffs, the *Rooker-Felder* doctrine does not apply. That doctrine cannot be invoked against plaintiffs who were not parties to the state court action. *See Lance v. Dennis*, 546 U.S. 459, 464, 466 (2006). Thus, claims by the plaintiffs here, other than Lucas, are not barred by the doctrine.

Therefore, I find that, except for the claims against the Prison Defendants, the *Rooker-Felder* doctrine bars suit in federal court by Lucas and I respectfully recommend the Court dismiss those claims on that alternative ground. I recommend the Court not dismiss the claims against the Prison Defendants by Lucas on this ground, nor dismiss the claims by plaintiffs other than Lucas on this ground.

### 2. Whether Litigation is Barred by Heck v. Humphrey

Defendants argue that plaintiffs' lawsuit is barred because Lucas' conviction has not been reversed or invalidated, citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). (Doc. 36-1, at 8-9). In *Heck*, the Supreme Court held that a plaintiff cannot recover damages for alleged unconstitutional conviction or imprisonment under Section 1983 unless the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . ." 512 U.S. at 487. Plaintiffs argue that the Section 1983 claims by plaintiffs CIF and Phalanx are not barred by the holding in *Heck* because they are legal entities separate from Lucas. (Doc. 42-1, at 13).

Plaintiffs' claims against the non-Prison Defendants, whether made directly by plaintiff or derivatively, are premised on the alleged invalidity of Lucas' convictions. Plaintiffs do not dispute that those convictions have not been reversed, expunged, declared invalid, or called into question by a federal writ of habeas corpus. Therefore,

plaintiffs Section 1983 claims are barred by the holding in *Heck*. The Southern District of Iowa reached the same finding and the same holding on essentially identical claims brought by the same plaintiffs against the same defendants. (Case No. 16-CV-419, Doc. 8, at 8-9). Plaintiffs did not appeal that ruling. In my view, therefore, it was frivolous for plaintiffs to bring essentially the same claims against the same defendants in this Court, after the ruling by the United States District Court for the Southern District of Iowa.

Therefore, I recommend the Court dismiss plaintiffs' claims against all non-Prison Defendants on this alternative ground, and take into account the frivolous nature of these claims when determining whether to sanction plaintiffs.

### 3. Whether Litigation is Barred by Issue Preclusion

Defendants argue that the Court should dismiss the complaint because of issue preclusion, arguing that plaintiffs have already unsuccessfully litigated these claims—or could have litigated these claims—in both state and federal courts. (Doc. 36-1, at 10-11). Defendants argue that plaintiffs litigated these claims first in state court, and then a second time in the United States District Court for the Southern District of Iowa. (*Id.*). In their resistance, plaintiffs argue that this argument has no merit against any plaintiff except Lucas because the other plaintiffs were not parties to the state court litigation. (Doc. 42-1, at 9-10). Plaintiffs argue that the claims are not barred as to Lucas because the state court decisions were "limited to the affirmance of the denial of Alan Lucas' motion to vacate a default judgment entered against him." (*Id.*, at 9). Plaintiffs further argue that the litigation in the Southern District of Iowa did not result in issue preclusion because that court "dismissed it *without prejudice*." (Doc. 42-1, at 10 (emphasis in original)). Finally, plaintiffs argue that their claims are not barred by issue preclusion because the issues are not the same as those involved in the state court action against Lucas. (Doc. 42-1, at 10-11).

Defendants again paint with too broad of a brush, arguing without distinction that all claims are barred by issue preclusion. This is clearly not the case with regard to claims made against the Prison Defendants. With regard to all other defendants, however, defendants are correct. Plaintiffs have litigated all of these claims, either by Lucas in state court, or by the other plaintiffs in the United States District Court for the Southern District of Iowa. Plaintiffs are simply wrong in asserting that the dismissal in the Southern District of Iowa was without prejudice.

Therefore, I recommend that the Court dismiss plaintiffs' claims against all non-Prison Defendants on this alternative ground.

### 4. *Whether Plaintiffs Have Exhausted Iowa Tort Claims Act*

Defendants argue that to the extent plaintiff Lucas is raising claims pursuant to 42 U.S.C. § 1983, he must first exhaust his administrative remedies. (Doc. 36-1, at 11-12). Defendants also argue that, "to the extent the Plaintiffs are seeking monetary damages from the State of Iowa, they must exhaust their administrative remedies under the Iowa Tort Claims Act ('ITCA')." (Doc. 36-1, at 12). I will address Lucas' claims against the Prison Defendants in a later section. As to the claims made by the other plaintiffs against other defendants, plaintiffs point out that they are not seeking money damages; rather, they are only seeking declaratory and injunctive relief. (Doc. 42-1, at 14).

With respect to the claims made by plaintiffs against the non-Prison Defendants, I agree that plaintiffs are not seeking money damages against the State. For that reason, I find the ITCA inapplicable.

Therefore, I do not recommend that the Court dismiss any claims on this ground.

### 5. *Whether Claims are Barred by the Statute of Limitations*

Defendants argue that "most, if not all of the claims raised by the Plaintiffs appear to be based on 42 U.S.C. § 1983," that "Iowa's [two-year] personal injury statute of limitations" therefore applies, and the "actions alleged by the Plaintiffs stem from the

conviction[s] of Lucas on March 14, 2014 and April 17, 2015." (Doc. 36-1, at 16). Defendants argue, therefore, that "[t]he actions alleged by the Plaintiff [sic] are beyond the two year statute of limitations and should be dismissed." (*Id.*). In making this argument, defendants acknowledge that "other actions referenced by Lucas are more recent (the contempt determination in 2017) . . .." (*Id.*). In response, plaintiffs argue that the statute of limitations has not run on any claim because Lucas remains in jail. (Doc. 42-1, at 17). Plaintiffs also argue that the court orders by Judges Baumgartner and Bruns continue to chill plaintiff Liebing's and McCool's First Amendment rights and constitute a continuing violation. (*Id.*). Defendants concede that the statute of limitations has not run as to claims by Lucas, but maintain the remaining claims are barred by the applicable statute of limitations, without addressing plaintiffs' First Amendment continuing violation argument. (Doc. 44, at 3).

Defendants' shotgun assertion that the statute of limitations bar "most, if not all" of plaintiffs' claims, without differentiation between the claims and the plaintiffs is too vague to warrant this Court's time to parse through the various claims to determine whether the applicable statute of limitations bars any claim. I do not believe it is the Court's responsibility to do the work for defendants. Moreover, because I believe plaintiffs' claims are otherwise defective for the various other reasons I have articulated, I do not believe it is necessary for the Court to conduct a statute of limitations analysis.

Therefore, I do not recommend that the Court dismiss any claims on this ground.

### F.    *Claims Against the Prison Defendants*

Plaintiffs' complaint brings claims against defendants Robert Johnson, Don Harris, Terry Hawkins, Todd Carver, Dawn Fulton, Rob Seil, Paula Addison and Neddie Renshaw, as individuals and in their official capacities as employees of the Iowa Department of Corrections. Those claims appear in paragraphs 73, 74, & 76 of the complaint and allege that while plaintiff Lucas has been incarcerated, these defendants

have: (1) denied him access to counsel (Doc. 1, at ¶ 73); (2) denied him access to the prison library (*id.*); and (3) opened and read the contents of his legal mail (*id.*, at ¶ 74). Plaintiffs argue that the Prison Defendants used information learned from monitoring Lucas' conversations with counsel to discipline Lucas by removing him from an honor dormitory, placing him on 23 hours cell confinement for fifty days, and denying him access to the prison law library and computer. (*Id.*, at ¶ 73). Plaintiffs seek a temporary restraining order and preliminary injunction against the Fort Dodge Correctional Facility employees "to return Alan Lucas to his prior honor dorm prisoner status and remove all other forms of discipline against him from the defendants . . . and order the state defendants to immediately cease and desist from opening letters marked legal mail addressed to Alan Lucas . . . ." (*Id.*, at ¶ 76).

The Prison Defendants move to dismiss the complaint against them on multiple grounds. First, defendants argue that plaintiff Lucas has failed to exhaust his administrative remedies. (Doc. 36-1, at 11-12, 22). Second, defendants argue that plaintiffs cannot seek money damages against the defendants in their official capacities. (*Id.*, at 13). Third, defendants argue that the complaint generally fails to state a claim on its face because if makes no substantive allegations against any individual defendant. (*Id.*, at 13-15). Fourth, defendants argue that the claims against the Prison Defendants fail because plaintiff Lucas has not claimed that the underlying discipline has been reversed or invalidated. (*Id.*, at 22-23). Fifth, defendants argue that plaintiff Lucas is not entitled to any relief for being segregated "unless the conditions [were] atypical or significant." (*Id.*, at 23). Finally, defendants argue that the Court should dismiss plaintiff Lucas' claim regarding alleged denial of access to the courts because he has failed to allege how he was prejudiced. (*Id.*, at 23-24). I will address each ground in turn.

### 1.    *Failure to Exhaust Administrative Remedies*

Under 42 U.S.C. § 1983, a civil action may be brought against any person who, while acting under color of state law, subjects any citizen to the deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States.  The statute is designed "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.  *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Therefore, the Court must identify the specific constitutional right allegedly infringed.  *See Graham v. Connor*, 490 U.S. 386, 394 (1989).

Under Section 1983, a plaintiff generally does not need to exhaust state remedies as a prerequisite to filing suit.  *See Patsy v. Bd. of Regents*, 457 U.S. 496, 500–01 (1982) (noting the Court has, on numerous occasions, "rejected the argument that a § 1983 action should be dismissed where the plaintiff has not exhausted state administrative remedies"); *Steffel v. Thompson*, 415 U.S. 452, 472–73 (1974) ("When federal claims are premised on [Section] 1983 . . . we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights.").  When, however, the plaintiff is a prisoner bringing claims regarding his conditions of incarceration, the Prison Litigation Reform Act of 1996 (PLRA), found at Title 42, United States Code, Section 1997e, an inmate must first exhaust all administrative remedies before bringing an action under Title 42, United States Code, Section 1983.  The exhaustion provision of the PLRA states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any

> jail, prison, or other correctional facility until such administrative remedies
> as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). The Prison Defendants move to dismiss claims against them on the ground that plaintiff Lucas has not exhausted his administrative remedies. (Doc. 36-1, at 11-12). Defendants argue that plaintiff Lucas "has not alleged that he completed exhaustion in the prison grievance system for any claim that he has raised in the present Complaint." (*Id.*, at 12). Plaintiffs argue the PLRA does not apply to plaintiff Lucas' claim because he is only seeking injunctive and declaratory relief and is not seeking money damages. (Doc. 42-1, at 14).

A plaintiff need not plead compliance with the exhaustion requirement. Rather, the failure to exhaust is an affirmative defense. In *Jones v. Bock*, 549 U.S. 199, 216 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *See also Lenz v. Wade*, 490 F.3d 991, 993 n.2 (8th Cir. 2007) (holding that failure to exhaust is an administrative remedy and the burden falls on the defendant, citing *Jones*). Nevertheless, a court may dismiss a complaint for failure to exhaust administrative remedies if it is plain on the face of the complaint that a grievance procedure is unexhausted. *See Jones*, 549 U.S. at 214–16 (clarifying that a court may dismiss a complaint for failure to exhaust administrative remedies if the allegations in the complaint sufficiently establish that exhaustion requirements have not been met). Where, as here, it is clear from the face of the complaint that plaintiff Lucas never exhausted his administrative remedies, dismissal is appropriate. *See Foster v. Anderson*, 165 F. Supp.3d 781, 787–88 (N.D. Iowa 2016) (dismissing a complaint where the court found, as a matter of law, that the plaintiff failed to exhaust his administrative remedies).

Therefore, I recommend the Court dismiss the complaint against the Prison Defendants on this ground.

### 2. Claims Against Defendants in Their Official Capacities

Defendants argue that they cannot be sued for money damages under Section 1983. (Doc. 36-1, at 13). Plaintiffs counter that their complaint does not seek money damages against any of the Prison Defendants in their official capacities. (Doc. 42-1, at 11). Plaintiffs are correct. Against the Prison Defendants, the only remedy plaintiffs seek is injunctive. Plaintiffs ask the Court to return plaintiff Lucas to an honor dormitory, "remove all other forms of discipline against him," and to "order the state defendants to immediately cease and desist from opening letters marked legal mail addressed to" plaintiff Lucas. (Doc. 1, ¶ 76; 36, ¶ Z).

Therefore, I recommend the Court not dismiss the complaint against the Prison Defendants on this ground.

### 3. Lack of Substantive Allegations Against Individual Defendants

Defendants argue that the Court should dismiss the complaint because "there is no connection between the acts alleged by the Plaintiffs and any particular conduct of a defendant." (Doc. 36-1, at 15). I have not addressed this argument as to the non-Prison Defendants because I found multiple other grounds for granting those defendants' motion to dismiss. Defendants to not specifically address the Prison Defendants in this portion of their brief. (Doc. 36-1). Plaintiffs do not address this argument at all in their brief. (Doc. 42-1).

As it pertains to the Prison Defendants, plaintiffs allege that the Prison Defendants denied Lucas access to counsel by placing plaintiff Lucas in a non-private telephone conference room, monitoring his communications, and then using the information overheard in those conversations to discipline plaintiff Lucas. (Doc. 1, ¶ 73). In the complaint, plaintiffs allege that Warden Johnson and Neddie Renshaw directed Paula

Addison, Dawn Fulton, and Rob Seil to write the reports. (*Id.*). As to Assistant Warden Harris, plaintiffs allege that when plaintiff Lucas complained about this matter, defendant Harris stated he did not care and to go ahead and sue him. (*Id.*). The complaint further alleges that defendants Johnson and Harris individually or through instructions to staff delayed delivery of plaintiff Lucas' legal mail for five days and violated plaintiff Lucas' rights by opening and reading the contents of the legal mail. (Doc. 1, ¶ 74). Although these allegations generally lack any reference to dates, and may be insufficient for other reasons as will be discussed, I cannot find that on their face they so lack a connection between the alleged violation and particular named defendants that dismissal is appropriate on that ground.

Therefore, I recommend the Court not dismiss the complaint against the Prison Defendants on this ground.

### 4. *Failing to Allege the Discipline has Been Reversed or Invalidated*

Defendants argue that the claims against the Prison Defendants fail to state a claim because plaintiffs failed to allege that the underlying discipline has been reversed or invalidated, citing *Portley-El v. Brill*, 288 F.3d 1063, 1066 (8th Cir. 2002), and *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2006). (Doc. 36-1, at 22-23). These cases involve application of *Heck v. Humphrey*, 512 U.S. 477 (1994), discussed *infra*, to cases of prison disciplinary punishment. Plaintiffs do not respond to this argument in their brief. (Doc. 42-1).

I find defendants' reliance on *Portley-El* and *Entzi* to be misplaced based on the complaint in this case. *Portley-El* dealt with the issue of whether an inmate's Section 1983 claim that prison officials imposed discipline in violation of his constitutional rights was *Heck*-barred because the inmate failed to show that the disciplinary decision had been reversed or invalidated. The plaintiff in *Portley-El* attempted to avoid the *Heck* rule by arguing that he was seeking restoration of other privileges, such as a prison job, and not

just the restoration of good time. The Eighth Circuit Court of Appeals found that the plaintiff's claim was *Heck*-barred, even though the plaintiff did not pursue the loss of his good time credits. As the court explained:

> Thus *Edwards* [*v. Balisok*, 520 U.S. 641, 643-44 (1997)] confirms that Portley-El's due process damage claims would be *Heck*-barred even if he had never requested restoration of his good time credits. Under *Heck*, "we disregard the form of the relief sought and instead look to the essence of the plaintiff's claims." *Sheldon* [*v. Hundley*], 83 F.3d [231,] 233 [(8th Cir. 1996)]. Because Portley-El seeks damages for the *imposition* of discipline that included the loss of good time credits, his damage claim challenges "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" and is *Heck*-barred. [*Heck*], 512 U.S. at 486.

*Portley-El*, 288 F.3d at 1067 (emphasis in original) (footnote omitted). Similarly, in *Entzi* the plaintiff sued under Section 1983 for "the loss of performance-based sentence-reduction credits for failing to participate in the sex-offender treatment course." *Entzi*, 485 F.3d at 1003.

Here, in contrast, plaintiffs have not alleged that Lucas lost any good time credits. The only adverse result of the allegedly wrongful discipline pled in the complaint was Lucas' removal from an honor dormitory, segregation, delay of his legal mail, and lack of access to a prison library and computer. For that reason, I find that plaintiffs need not establish that the underlying discipline has been reversed or invalidated.

Therefore, I recommend the Court not dismiss the complaint against the Prison Defendants on this ground.

### 5. *Failure to Allege Segregation Was Atypical or Significant*

The Prison Defendants also move to dismiss the claims against them regarding plaintiff Lucas' segregation in prison on the ground that plaintiff Lucas "has no liberty [interest] in not being segregated unless the conditions are atypical or significant," citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995), and *Phillips v. Norris*, 320 F.3d 844,

846-47 (8th Cir. 2003). (Doc. 36-1, at 23). In the complaint, plaintiffs allege that plaintiff Lucas was placed on 23 hours cell confinement for fifty days. (Doc. 1, ¶ 73). Plaintiffs did not address this issue in their brief. (Doc. 42-1).

In *Sandin*, the Supreme Court stated:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483-84 (citations omitted). A prisoner has no constitutional right to a particular housing unit. *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The Eighth Circuit Court of Appeals has "consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Phillips*, 320 F.3d at 847 (citing *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996).

For plaintiffs to have sufficiently pled a constitutional violation in connection with plaintiff Lucas' segregation, they had to allege that there was a difference between Lucas' conditions in segregation and the conditions in the general population and those differences amounted to an atypical and significant hardship. Plaintiffs did not allege that plaintiff Lucas was segregated in atypical conditions or in conditions that caused him a significant hardship. When, as here, a plaintiff has failed to allege facts that would constitute a constitutional violation, dismissal of that claim is appropriate. *See Hyke v. Steenblock*, No. C16-0009-LRR, 2016 WL 407255, at * 3 (N.D. Iowa Feb. 2, 2016) (dismissing Section 1983 claim for failure to allege facts showing that segregation was atypical or cause significant hardship); *Ray v. O'Brien*, No. C15-0123-LRR, 2015 WL 9473483, at * 3 (N.D. Iowa Dec. 28, 2015) (same).

Therefore, I recommend the Court dismiss any claims arising out of plaintiff Lucas' segregation against the Prison Defendants on this ground.

### 6. Failure to Allege Prejudice Regarding Access to Courts

The Prison Defendants further argue that the Court should dismiss any claims against them regarding plaintiff Lucas' access to the courts because plaintiffs failed to allege that Lucas was prejudiced, citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996) and *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). (Doc. 36-1, at 23-24). Once again, plaintiffs did not address this argument in their brief. (Doc. 42-1).

"To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) (citations omitted). "To prove actual injury, [a prisoner] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Id.* (quoting *Lewis*, 518 U.S. at 353).

Here, the only claim plaintiffs make regarding access to the courts is a vague and factually deficient assertion that Prison Defendants violated Lucas' rights "by denying him access to the prison law library and computer." (Doc. 1, ¶ 73). It is not clear from the complaint when or how this occurred or for how long Lucas was allegedly denied access. In any event, plaintiffs have not alleged facts that would show, if true, that the Prison Defendants' conduct in any way deprived plaintiff Lucas of "an opportunity to litigate a claim challenging [Lucas'] sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *White*, 494 F.3d at 680. Plaintiffs do not allege that Lucas suffered any adverse consequences in relation to the pursuit of his litigation as a result of the temporary deprivation of access to the law library.

Therefore, I recommend the Court dismiss any claims against the Prison Defendants related to an alleged denial of plaintiff Lucas' access to the courts.

### G.    Defendants' Claim of Qualified Immunity

As another alternative argument, all defendants contend that they are entitled to qualified immunity.  (Doc. 36-1, at 24).  Plaintiffs disagree.  (Doc. 42-1, at 15-17).

"'Qualified immunity protects a government official from liability in a [section] 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known.'" *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 849-50 (8th Cir. 2006) (alteration in original) (quoting *Pool v. Sebastian Cty., Ark.*, 418 F.3d 934, 942 (8th Cir. 2005)).  "To overcome qualified immunity, plaintiffs must demonstrate both that '(1) there was a deprivation of a constitutional or statutory right, and (2) the right was clearly established at the time of the deprivation.'" *Dean v. Cty. of Gage, Neb.*, 807 F.3d 931, 936 (8th Cir. 2015) (quoting *Parker v. Chard*, 777 F.3d 977, 980 (8th Cir. 2015)).

"[Q]ualified immunity is an affirmative defense," and "it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995).  "[D]ismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *McCormack v. Citibank, N.A.*, 979 F.2d 643, 646 (8th Cir. 1992) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

In arguing that they are entitled to qualified immunity, defendants summarily assert:

> The law is well-established any Plaintiff can not [sic] pursue an action based on a state court conviction, which has not been reversed, against the investigators, prosecutors and judges involved in the matter. Likewise, an offender can not [sic] pursue a claim against prison official [sic] simply because he is in segregation and did not get a piece of mail for five days.

(Doc. 36-1, at 25). I find this to be nothing more than a summarized recitation of the other grounds defendants have already raised for dismissing the complaint. Because I find defendants' other arguments are meritorious, qualified immunity is moot. Therefore, I recommend the Court deny as moot defendants' motion to dismiss on this ground.

## VII. DEFENDANTS' MOTION FOR SANCTIONS

Defendants ask the Court to impose sanctions against plaintiffs and their attorneys because the underlying claims have been previously litigated, the claims are "completely frivolous," and the United States District Court for the Southern District of Iowa dismissed "a nearly identical case." (Doc. 38-1, at 4, 7). Plaintiffs resisted the motion, arguing that defendants violated Rule 11 of the Federal Rules of Civil Procedure by not giving plaintiffs an opportunity to withdraw or amend their pleadings to avoid sanctions. (Doc. 43-1, at 3-4). Plaintiffs also maintain, however, that their complaint is not frivolous and, instead, alleges meritorious claims. (*Id.*, at 4-5). Plaintiffs do not address the fact that the United States District Court for the Southern District of Iowa dismissed a complaint that, in part, was nearly identical to the complaint they filed, with counsel, in this Court.

Federal Rule of Civil Procedure 11(c)(1)(A) provides that a motion for sanctions "must be made separately from any other motion and must describe the specific conduct [at issue]." FED. R. CIV. P. 11(c)(2). Further, the Rule requires a party to serve the motion for sanctions pursuant to federal service requirements, but not file the motion with the Court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . .." *Id.* Defendants do not assert that they complied with Rule 11 by serving a copy of the motion on plaintiffs before they filed the motion. Rather, defendants argue that the motion for sanctions is

still valid because 21 days have passed since they filed the motion and plaintiffs have still not withdrawn or narrowed any of their claims. (Doc. 45, citing *Olson v. Bank of America*, 518 Fed. App'x 488, 490 (8th Cir. 2013)).

I find that defendants have failed to comply with Rule 11. Defendants' citation to *Olson* is not helpful. In that case, the defendants did comply with Rule 11 by serving notice to the opposing party before filing their motion for sanctions. In *Olson*, the plaintiff complained that the motion for sanctions was filed months after the defendants filed a motion to dismiss and therefore made it difficult for the plaintiffs to amend their complaint. *Olson*, 518 Fed. App'x at 490. That is not what happened here.

Therefore, I recommend that the Court deny defendants' motion for sanctions (Doc. 38) and not impose sanctions based on that motion.

Nevertheless, I recommend the Court consider imposing sanctions against plaintiffs and their attorneys *sua sponte* and upon its own authority because I find that plaintiffs' refiling of many identical claims in this Court, after they were dismissed by the United States District Court for the Southern District of Iowa, to be frivolous and, as noted throughout this Report and Recommendation, I find many of plaintiffs' other claims to be frivolous.

A violation of Rule 11 of the Federal Rule of Civil Procedure may occur when, for example, a pleading contains claims unsupported by existing law or by a nonfrivolous argument for extension or reversal of existing law. FED. R. CIV. P. 11(b)(2). The standard for imposition of Rule 11 sanctions is generally that the conduct of the party or its counsel was "in reckless disregard of his duties to the court" when "viewed objectively." *See Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006). A court may raise a Rule 11 sanction issue *sua sponte*. In determining the appropriate Rule 11 sanction, the Court may consider "the wrongdoer's history, experience and ability, the severity of the violation, the degree to which malice or bad

faith contributed to the violation, and other factors." *Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995).

In addition to its Rule 11 authority, the Court possesses an inherent authority to sanction parties for abuse of the judicial process. *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1993). The scope of the inherent authority extends beyond that of Rule 11. Sanctions under Rule 11 may be imposed only for violations committed "[b]y presenting to the court a pleading, written motion, or other paper." FED. R. CIV. P. 11(b). The Court's inherent authority to sanction "reaches both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

When a court raises the issue of sanctions *sua sponte*, before the court may impose sanctions, the individual must receive notice that sanctions are being considered and an opportunity to be heard. FED. R. CIV. P. 11(c)(5)(B); *In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (citing *Chambers*, 501 U.S. at 56–57). Therefore, if the Court agrees with me that some of the conduct by plaintiffs and their attorneys was frivolous and the Court is inclined to consider sanctions, the Court should provide plaintiffs notice and an opportunity to be heard on the issue.

## VIII. CONCLUSION

For the reasons set forth above, I respectfully recommend the Court:

(1) **Grant** defendants' motion to dismiss (Doc. 36) on the grounds and for the reasons I set out above;

(2) **Deny** defendants' motion for sanctions (Doc. 38), and;

(3) **Consider** *sua sponte* imposing sanctions against plaintiffs and their attorneys.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the

record forming the basis for the objections.  *See* FED. R. CIV. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

   **IT IS SO ORDERED** this 26th day of March, 2018.


_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa